AE

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA RUDZINSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 05 C 0474 |
| v. ) | |
| ) | John W. Darrah |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY and ) | |
| SHARP ELECTRONIC COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sandra Rudzinski, filed a two-count Amended Complaint against the Defendants, Metropolitan Life Insurance Company ("MetLife") and Sharp Electronic Company ("Sharp"), alleging violations of Employment Retirement Income Security Act ("ERISA"). Presently pending before the Court is Sharp's Motion to Dismiss Count II. Count II asserts that Sharp wrongfully interfered with her receiving ERISA benefits in violation of § 510 of ERISA (codified as 29 U.S.C. § 1140) and that Sharp breached its fiduciary duty to Rudzinski in violation of § 502(a)(3) of ERISA (codified as 29 U.S.C. § 1132(a)(3)).

## BACKGROUND

A reading of the Amended Complaint supports the following summary of the alleged operative conduct of the parties as related to Count II.

In 1997, for the benefit of its employees, Sharp, as part of its ERISA-provided "employee welfare benefit plan" ("the Plan"), acquired from MetLife a group policy of disability income insurance. The group insurance policy provides for the payment of long-

term monthly disability benefits for employees participating in the Plan in the event they should become totally disabled. Sharp, at all times, was the Plan administrator.

Under the Plan, Sharp was required to pay short-term disability benefits to qualifying inactive disabled employees during a 180-day policy benefits elimination period. Thereafter, MetLife was to pay long-term disability benefits to the qualifying inactive employees. On April 2, 2002, due to chronic fatigue, joint pain and headaches, Rudzinski ceased her active employment with Sharp. Sometime thereafter, Rudzinski was diagnosed with fibromyalgia. As a participating employee in the Plan, Rudzinski qualified for both the payment of short-term and long-term disability benefits. Following the cessation of her active employment, Rudzinski began receiving short-term disability benefit payments during the 180-day policy benefits elimination period. Shortly thereafter, Rudzinski filed a claim with MetLife, requesting payments for long-term disability insurance benefits under the policy to commence immediately upon completion of the 180-day elimination period.

On July 9, 2002, Sharp notified Rudzinski, in writing, that her short-term disability payments would be terminated as of July 31, 2002. In its written notification to Rudzinski, Sharp also informed her that, if she did not return to active employment by July 31, 2002, her job would be terminated effective immediately. Sometime prior to the July 31, 2002, deadline, Sharp informed Rudzinski that, in the event she did not return to work, she, as a participant in the Plan, could preserve her long-term disability coverage with MetLife by obtaining a Conversion Policy and paying premiums on her own behalf as a non-employee. Rudzinski did not return to active employment by July 31, 2002, because of her disabilities. Sharp then terminated Rudzinski's employment on July 31, 2002, and discontinued paying the long-term disability insurance premiums. Thereafter, Rudzinski applied for the

Conversion Policy and began paying the scheduled premiums. After expending thousands of dollars in premiums for coverage under the Conversion Policy, Rudzinski was denied long-term disability benefit coverage by MetLife because she had a pre-existing disability at the time she applied for the Conversion Policy.

Prior to bringing this action, Rudzinski made a demand of MetLife for the payment of permanent long-term disability benefits. MetLife has refused to make any long-term disability payments.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). If there are no set of facts that would entitle the plaintiff relief, dismissal is warranted. *See Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (*Stachowski*).

## ANALYSIS

Rudzinski alleges that Sharp violated 29 U.S.C. § 1140 by wrongfully interfering with her disability benefit rights under the Plan. Rudzinski also alleges, *inter alia*, that Sharp unilaterally changed its employment relationship with her after it, in violation of its fiduciary

duty to her, misled her into believing that by obtaining a Conversion Policy and paying the requisite insurance premiums for the remainder of the elimination period, she could protect her rights to long-term disability benefits.

Sharp seeks dismissal of Count II on multiple grounds.

Sharp first argues that Rudzinski fails to state a claim under Rule 12(b)(6) because she, in bringing an action under 29 U.S.C. § 1140, fails to allege that Sharp acted with specific intent in its alleged wrongful interference with Rudzinski's right to receive long-term disability benefits. Defendant relies on several cases in support of its argument. However, the cases relied upon are readily distinguishable from the instant case. *See, e.g., Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005) (decision on the merits – not a motion to dismiss); *Lindermann v. Mobile Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998) (case did not involve an employer who was obligated to pay insurance premiums and an allegation that employer deliberately failed to make the necessary payments for the employee to maintain eligibility to qualify for benefits); *Teumer v. General Motors Corp.*, 34 F.3d 542, 550 (7th Cir. 1994) (motion for summary judgment).

Rudzinski counters that her allegations, in their totality, adequately support the contention that the deprivation of her plan rights was not merely the incidental consequence of decisions by Sharp but, rather, the intended result of Sharp's calculated decisions to accomplish that result. Rudzinski asserts that Count II states a claim that Sharp's interference with her rights under the Plan was with Sharp's full knowledge "that the only outcome of its actions would be (the) loss of benefits which consequently resulted." *See Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990).

4

Inclusion of an allegation of intent in a civil complaint is required only as necessary to "satisfy Rule 8's notice of pleading minimum and Rule 9's requirement that motive and intent be pleaded generally in specifically enumerated claims." *Triad Assoc., Inc. v. Robinson*, 10 F.3d 492, 497 (7th Cir. 1993) (*Triad*). Where the satisfaction of a special pleading standard is not explicitly required by Rule 9(b), a complaint which does not allege intent will survive a 12(b)(6) motion to dismiss for failure to state a claim, even where proof of intent is essential to establishing the *prima facie* case. *See Triad*, 10 F.3d at 497. Because § 1140 claims are not listed in Rule 9(b), complaints alleging violations of § 1140 need not satisfy any standard other than the liberal pleading standards set forth in Rule 8(a). *See Swierkiewicz*, 534 U.S. at 513 (cautioning that "all civil actions, with limited exceptions" need satisfy only the "simplified pleading standard" required by Rule 8(a)).

Under the instant circumstances, there is no rule or statutory provision requiring a plaintiff to allege, either directly or indirectly, a defendant's state of mind when bringing a claim under § 1140; Count II of Rudzinski's Amended Complaint satisfies the general notice requirements of the federal pleading standards.

Sharp next argues that Rudzinski fails to state a claim because she does not plead with particularity that Sharp acted wrongfully in changing Rudzinski's employment status. However, Rudzinski's pleadings set forth a chronology of events from which it can be inferred that Sharp occasioned an involuntary change in Rudzinski's employment status on July 31, 2002; that at the time of Rudzinski's discharge, only 60 days remained until she would have begun receiving her permanent long-term disability benefits but for change in her employment status and/or the rescission of the Conversion Policy for which she had applied based on Sharp's advice; and that Sharp did not at all times act in the exclusive

5

interest of Rudzinski during her tenure as plan beneficiary. Accordingly, Rudzinski has sufficiently pled that the employer-employee relationship was changed in some discriminatory or wrongful way. Count II of Rudzinski's Amended Complaint sufficiently pleads a § 1140 claim.

Sharp next argues that Rudzinski's breach of fiduciary duty claim fails because a claim brought under 29 U.S.C. § 1132(a)(3) constitutes an inappropriate remedy for seeking the recovery of ordinary benefits.

In Count II, Rudzinski alleges that Sharp breached its fiduciary duty by not acting exclusively in the interest of Rudzinski for the purpose of enabling her to qualify for disability benefits. In her prayer for relief, Rudzinski seeks the reinstatement of the long-term disability benefits of which she was allegedly wrongfully deprived. In terms of meeting federal notice pleading standards, the allegations by Rudzinski are sufficient for purposes of informing Sharp of the gravamen of Rudzinski's claims.

Sharp contends, however, that even if Rudzinski's Amended Complaint satisfies notice pleading requirements for establishing the basis for a § 1132(a)(3) claim, she is precluded from bringing a claim under § 1132(a)(3) because she has available to her alternative remedies for seeking the recovery of her lost benefits. In support of its argument, Sharp cites *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 615 (6th Cir. 1998) (*Wilkins*) (observing that the Supreme Court has cautioned that a plaintiff has no right to bring a cause of action under § 1132(a)(3) seeking personal recovery of denied benefits alleged to have resulted from a breach of fiduciary duty by a plan administrator where redress is available through the pursuit of other § 1132 remedies). Also cited by Sharp is *Tolson v. Avondale Indus.*, 141 F.3d 604, 610-11 (5th Cir. 1998) (*Tolson*) (concluding that relief through the

application of § 1132(a)(3) is inappropriate where plaintiff has "adequate relief available for the alleged improper denial of benefits through his right to sue the Plans directly under section 1132(a)(1)"). However, to the extent *Wilkins* and *Tolson* each recognize and articulate the general rule that "where Congress elsewhere provided adequate relief for a beneficiary's injury (under 29 U.S.C. § 1132), there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate'" (*Varity Corp. V. Howe*, 516 U.S. 489, 515 (1996) (*Varity*), neither is more than partially instructive on this issue.

Furthermore, the facts present in both *Wilkins* and *Tolson* are distinguishable from the allegations in the instant case. First, unlike the allegations in the instant case, both *Wilkins* and *Tolson* involved grievances constituting "nothing more than a routine challenge of a denial of disability benefits" (*see, e.g., Wilkins*, 150 F.3d at 613 n2). Second, neither *Wilkins* nor *Tolson* involves circumstances in which the employer/administrator is alleged to have misled the plan participants regarding employee benefits. Third, neither *Wilkins* nor *Tolson* involves a plaintiff who, at the time of bringing the lawsuit, was no longer a member/beneficiary of the plan and, therefore, had no entitlement to benefits under the terms of the plan.

Here, the allegations more closely parallel those present in *Varity*. The allegations in both the instant case and *Varity* involve the alleged making of misleading statements by employers/administrators to plan participants who, when later bringing their suits seeking the reinstatement of lost benefits, were no longer members of the benefit plan. *See Varity*, 516 U.S. at 515; *see, e.g., Wilkins*, 150 F.3d at 615 (observing that the district court had correctly distinguished the facts in *Varity* from those in the case at hand and that unlike the

7

facts before the district court, "[t]he employer-insurer in *Varity* breached its fiduciary duty to the plan's beneficiaries by 'significantly and deliberately' misleading them, causing them to lose their non-pension benefits.").

The Supreme Court, in *Varity*, held that a former plan participant who is otherwise without a remedy has no choice but to sue for breach of fiduciary duty under § 1132(a)(3) when seeking the reinstatement of lost benefits. *Varity*, 516 U.S. at 515 (concluding that individual former plan members allegedly misled by their employers/administrators "must rely on the third subsection or they have no remedy at all" in terms of recovering the loss of plan benefits); *see also Wald v. Southwestern Bell Corp. Custom Medical Plan*, 83 F.3d 1002, 1006 (8th Cir. 1996) (under *Varity*, where acts of misrepresentation have occurred, an individual is permitted to sue for breach of fiduciary duty to recover ordinary benefits); *see also Wilkins*, 150 F.3d at 613 n2 (the correct interpretation of *Varity* is that a cause of action seeking equitable relief brought pursuant to § 1132(a)(3) is permissible under "circumstances in which the employer deceived the employee-beneficiaries of the insurance plan and where the employees suffered injuries for which (the first and second subsections of § 1132) provided no adequate remedy").

In deciding *Varity*, the Court concluded that in circumstances where reasonable employees would know their employer is the plan administrator and has expert knowledge about how their plan works, *Varity*, 516 U.S. at 503, and the misrepresentations regarding employee benefits are made to the beneficiaries while the employer is wearing its "fiduciary," as well as its "employer," hat, *Varity*, 516 U.S. at 498, there is no basis in the statute for any special interpretation that might insulate the employer/administrator from the legal consequences of its conduct, *Varity*, 516 U.S. at 491.

8

Because Rudzinski is a former plan participant, her claim under § 1132(a)(3) to seek the recovery of lost ordinary benefits is both appropriate and necessary. Accordingly, the breach of fiduciary duty claim pled in Count II of the Amended Complaint adequately states a claim upon which relief can be granted.

Alternatively, Sharp argues Rudzinski's breach of fiduciary duty claim is time-barred by the three-year statute-of-limitations provision set forth in 29 U.S.C. § 1001, et seq.

A claim for breach of fiduciary duty brought pursuant to § 1132(a)(3) must be filed within three years after the date on which the plaintiff discovers or acquires actual knowledge of the breach or violation of fiduciary obligation. 29 U.S.C. § 1113; *see Rush v. Martin Petersen Co., Inc.*, 83 F.3d 894, 896 (7th Cir. 1996).

Sharp contends that Rudzinski acquired the requisite knowledge of the alleged breach sometime prior to July 31, 2002, either when Sharp informed Rudzinski on July 9, 2002, that her job would be terminated if she did not return to work by July 31, 2002, or when it ceased paying premiums for long-term disability benefits on Rudzinski's behalf as of July 31, 2002, after she failed to return to active employment. Rudzinski contends that actual knowledge of Sharp's alleged interference with her benefits did not accrue until September 12, 2005, at a settlement conference, less than a month before her Amended Complaint was filed.

A plaintiff's failure to file within a statute-of-limitations period is an affirmative defense, which is usually resolved after the complaint stage. *See Northern Trust*, 372 F.3d at 888. Rarely is a statute-of-limitations defense a good reason to dismiss under Rule 12(b)(6). *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1030 (7th Cir. 2004). Ordinarily, parties are barred from asserting a statute-of-limitations defense on a Rule 12(b)(6) motion to dismiss. *Russell v. City of Chicago*, 2004 WL 868368, at 3 (N.D. Ill.

April 22, 2004). "Courts generally prefer to resolve disputes on their merits instead of procedural technicalities." *Ready v. Feeney*, 2005 WL 526886 at 2 (N.D. Ill. March 2, 2005), *quoting Fidelity & Deposit Co. v. Ramco Indus.*, 1996 WL 392164 at 3 (N.D. Ill. July 11, 1996)). Where dismissal at an early stage of litigation is sought on the basis of a statute-of-limitations defense, "the question is only whether there is any set of facts that if proven would establish a defense to the statute of limitations." *Clark v. City of Braidwood*, 318 F.3d 764, 768 (7th Cir. 2003). Under a Rule 12(b)(6) analysis, the possibility exists for a plaintiff to plead itself out of court where facts alleged in the complaint show the suit is barred by a statute of limitations. *See, e.g., Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 670 (7th Cir. 1998). However, where ambiguities appear in a complaint, they are to be construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998).

Because Sharp and Rudzinski dispute the date that Rudzinski acquired actual knowledge and because Rudzinski's Amended Complaint fails to establish, on its face, that her claim for breach of fiduciary duty is time-barred, the issue of whether Rudzinski's Amended Complaint was brought within the applicable statute-of-limitations period requires the resolution of a factual question, which, in this case, cannot be properly determined at this stage of the litigation.

## CONCLUSION

For the foregoing reasons, Sharp's Motion to Dismiss is denied.

Dated: April 27, 2006

JOHN W. DARRAH
United States District Court Judge

10