UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA RUDZINSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 05 C 0474 |
| v. ) | |
| ) | John W. Darrah |
| METROPOLITAN LIFE INSURANCE ) | |
| COMPANY and ) | |
| SHARP ELECTRONIC COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sandra Rudzinski, filed a two-count Amended Complaint against the Defendants, Metropolitan Life Insurance Company ("MetLife") and Sharp Electronic Company ("Sharp"), alleging violations of Employment Retirement Income Security Act ("ERISA"). On July 19, 2006, Sharp filed a three-count Cross-Claim against MetLife, seeking redress for losses Sharp allegedly suffered as a result of being sued by Rudzinski. Currently before the Court is MetLife's Motion to Dismiss Counts I and III of Sharp's Cross-Claim.[1]

## BACKGROUND

A reading of the Amended Complaint and the Cross-Claim supports the following summary of the alleged operative conduct of the parties.

---

[1] On January 16, 2007, Rudzinski voluntarily dismissed Count II of her Amended Complaint. Count II of the Amended Complaint was the sole Count that raised allegations against Sharp. Count II of the Cross-Claim alleges that MetLife should be equitably estopped from claiming that Sharp was required to pay Rudzinski's long-term disability premiums following her termination and that Sharp's nonpayment of these premiums was one of its reasons for denying Rudzinski's claim. Thus, as a result of the dismissal of Count II of the Amended Complaint, Count II of the Cross-Claim (voluntary estoppel) is dismissed.

In April 2002, MetLife issued a Long-Term Disability Benefits Policy ("Policy") to Sharp to underwrite the Long-Term Disability Insurance Plan ("Plan") that Sharp offers its employees. The Plan was an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1). Sharp, as the administrator of the Plan, was a fiduciary pursuant to ERISA; and MetLife was also a fiduciary under the Plan pursuant to ERISA because, among other reasons, it had the "discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits."

Under the Plan, Sharp was required to pay short-term disability benefits to qualifying inactive disabled employees during a 180-day policy benefits elimination period. Thereafter, MetLife was to pay long-term disability benefits to the qualifying inactive employees. Both the Plan and Policy were written by MetLife. The Plan provided for monthly payments to eligible employees who were both disabled and became disabled while covered under the Plan. Pursuant to the Plan, Sharp was not required to pay premiums for an employee following the employee's termination of employment. The only exception was if the employee was disabled and within an elimination period at the time of the employee's termination of employment.

On April 2, 2002, due to chronic fatigue, joint pain and headaches, Rudzinski ceased her active employment with Sharp. Sometime thereafter, Rudzinski was diagnosed with fibromyalgia. As a participating employee in the Plan, Rudzinski qualified for both the payment of short-term and long-term disability benefits. Following the cessation of her active employment, Rudzinski began receiving short-term disability benefit payments during the 180-day policy benefits elimination period. Shortly thereafter, Rudzinski filed a claim with MetLife, requesting payments for long-term disability insurance benefits under the Policy to commence immediately upon completion of the 180-day elimination period.

2

On July 9, 2002, Sharp notified Rudzinski, in writing, that her short-term disability payments would be terminated as of July 31, 2002. In its written notification to Rudzinski, Sharp also informed her that, if she did not return to active employment by July 31, 2002, her job would be terminated effective immediately. Sometime prior to the July 31, 2002 deadline, Sharp informed Rudzinski that, in the event she did not return to work, she, as a participant in the Plan, could preserve her long-term disability coverage with MetLife by obtaining a Conversion Policy and paying premiums on her own behalf as a non-employee. Rudzinski did not return to active employment by July 31, 2002, because of her disabilities. Sharp then terminated Rudzinski's employment on July 31, 2002, and discontinued paying the long-term disability insurance premiums. Thereafter, Rudzinski applied for the Conversion Policy and began paying the scheduled premiums. Rudzinski was denied long-term disability benefit coverage by MetLife because she had a pre-existing disability at the time she applied for the Conversion Policy. Prior to bringing this action, Rudzinski made a demand of MetLife for the payment of permanent long-term disability benefits. MetLife has refused to make any long-term disability payments.

In early 2005, Rudzinski filed this lawsuit, naming MetLife as the sole defendant, and brought a denial of benefits claim against it. (Cross-Claim ¶ 33). After the lawsuit was filed, and more than two years after it initially denied Rudzinski's claim, MetLife advised Rudzinski that an additional reason why she did not qualify for benefits was that Sharp discontinued her long-term disability benefit premiums following her termination of employment. (Cross-Claim ¶ 34). Sharp asserts that MetLife made this statement despite the fact that Sharp was not required to pay such premiums. (Cross-Claim ¶ 11). Additionally, in none of MetLife's claim denial letters nor in any correspondence it sent to Rudzinski during the processing of her claim did MetLife ever state to Rudzinski that it was denying her claims because of Sharp's nonpayment of

3

premiums. (Cross-Claim ¶ 32). There is no documentation that this was a reason for MetLife's denial of Rudzinski's claim. (Cross-Claim ¶ 34). Based on MetLife's statement, Rudzinski filed an Amended Complaint, bringing claims of breach of fiduciary duty and interference with attainment of benefits under ERISA against Sharp. (Cross-Claim ¶ 35).

Sharp now maintains a two-count Cross-Claim against MetLife. Count I of the Cross-Claim alleges that MetLife breached its fiduciary duty, pursuant to 29 U.S.C. § 1132(a)(2),(3) and 29 U.S.C. § 1109(a), and that this breach was the direct and proximate cause of Rudzinski's filing the Amended Complaint naming Sharp as a defendant. Count III seeks indemnification because Sharp alleges that if Sharp is found liable to Rudzinski on either side of her claims against Sharp, it will be due to the negligent and improper acts and conduct of MetLife.

## LEGAL STANDARD

In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). If there is no set of facts that would entitle the plaintiff to relief, dismissal is warranted. *See Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) (*Stachowski*).

## ANALYSIS

MetLife asserts that Count I of the Cross-Claim should be dismissed because Sharp does not have standing to bring a claim for breach of fiduciary duty against MetLife absent a nexus between the claim alleged and an exercise of discretionary authority by Sharp. Specifically, MetLife asserts that Sharp does not qualify as a fiduciary with respect to the alleged Cross-Claim. Under ERISA, only a "participant, beneficiary, or fiduciary" may bring an action, 29 U.S.C. § 1132(a). An employer who maintains an employee benefit plan, such as Sharp, is a plan sponsor. 29 U.S.C. § 1002(16)(B). According to 29 U.S.C. § 1002(21)(A), a plan sponsor acts as a "fiduciary" with respect to a plan only to the extent that it exercises discretionary authority in the management or administration of a plan or its assets, or in the rendering of investment advice. MetLife asserts that an employer does not obtain standing under ERISA simply because it is a fiduciary under an ERISA-regulated plan but, rather, obtains standing only when, or if, it is acting in its fiduciary capacity and that because Sharp fails to allege the requisite nexus to establish standing, Count I of the Cross-Claim should be dismissed.

An employer/plan sponsor who is also the plan administrator (or who otherwise has discretionary authority) is a fiduciary. *Rud v. Liberty Life Assurance Co.*, 438 F.3d 772, 773-74 (7th Cir. 2006) (a plan sponsor who is also a plan administrator is a fiduciary). Accordingly, for the purposes of stating a claim, Sharp need only allege that it was a fiduciary, which Sharp pleads in Count I. Sharp is not required to plead facts in support of its claims in order to establish standing and need not plead with particularity. *Swierkiewicz*, 534 U.S. at 511. The determination of Sharp as a fiduciary is a factual inquiry, which is not properly before the Court in this motion to dismiss. *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 538 (7th Cir. 1991) (the question of whether an entity is a fiduciary "involves factual determinations"). Accordingly,

5

Sharp has sufficiently pled breach of fiduciary duty. Count I of Sharp's Cross-Claim sufficiently pleads a Section 1132(a) and Section 1109(a) claim.

MetLife also seeks to dismiss Count III of Sharp's Cross-Claim for indemnity. Again, MetLife asserts that Count III is preempted by ERISA. The ERISA statute and ERISA's legislative history are silent as to whether co-fiduciary contribution is permitted under ERISA's remedial scheme. *Plumbers Local 93 Health and Welfare Pension Fund v. Dipietro Plumbing Co.*, No. 94 C 7378, 1999 WL 301666, *4 (April 30, 1999) (*Dipietro Plumbing Co.*). Some courts in the Northern District have read this silence in the face of ERISA's elaborate and comprehensive system of procedure as evidence that Congress did not intend to authorize contribution if it was not included in the statute. *See e.g. Mutual Life Ins. Co. of New York v. Yampol*, 706 F. Supp. 596, 599 (N.D. Ill. 1989) (J.Leinenweber). However, here, the issues raised in Count III can be distinguished and do not present the same problems with respect to co-fiduciary contribution addressed in these cases. Here, Sharp claims none of MetLife's claim denial letters, nor any correspondence with Plaintiff, state Plaintiff's claim was denied because Sharp discontinued paying Plaintiff's premiums following her termination of employment or because Sharp did not pay Plaintiff's premiums during an elimination period. It was only after the lawsuit was filed that MetLife advised Plaintiff that one of the reasons it denied Plaintiff's claim was because of these alleged failures of Sharp. In essence, in Count III of the Cross-Claim, Sharp is claiming that MetLife's allegedly false statements made after the filing of this suit has improperly incurred liability for Sharp and other damages for which Sharp should be indemnified. Thus, Count III of the Cross-Claim states a cognizable claim apart from the preemption considerations presented by ERISA.

6

## CONCLUSION

For the foregoing reasons, MetLife's Motion to Dismiss is denied as to Counts I and III granted as to Count II.

Dated: January 25, 2007

JOHN W. DARRAH
United States District Court Judge