**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| SANDRA RUDZINSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 0474 |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | Magistrate Judge Keys |
| COMPANY and SHARP ELECTRONIC | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| SHARP ELECTRONICS CORPORATION, | ) | |
| | ) | |
| Cross-Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05 C 0474 |
| | ) | |
| METROPOLITAN LIFE INSURANCE | ) | Magistrate Judge Keys |
| COMPANY, | ) | |
| | ) | |
| Cross-Defendant. | ) | |

**DEFENDANT METROPOLITAN LIFE INSURANCE COMPANY'S RESPONSE TO
CROSS-PLAINTIFF SHARP ELECTRONIC CORP.'S
<u>MOTION TO DISQUALIFY MANDELL MENKES LLC</u>**

**INTRODUCTION**

Sharp requests that this Court take the drastic measure of removing MetLife's chosen counsel based upon specious legal reasoning and a falsified factual basis. Going beyond aggressive advocacy, Sharp gratuitously attempts to destroy MetLife's relationship with its counsel for the sake of pure harassment. MetLife vigorously denies any conflict of interest. However, even if Sharp's fabricated conflict existed, MetLife would be the proper party to address any such conflict, and MetLife would be free to waive it in its own discretion.

Furthermore, Sharp has no standing to bring this motion because Sharp fails to allege any harm to Sharp arising from Mandell Menkes' purported conflict. Moreover, contrary to Sharp's contention, Mandell Menkes has no interest in this case other than its professional obligation to MetLife, and Mandell Menkes has not taken any litigation position on behalf of MetLife or any other client that is contrary to MetLife's interests.

Sharp falsely accuses Mandell Menkes of: (1) "concocting" a defense during a mediation with Rudzinski (that Sharp had an obligation to pay Rudzinski's post-termination premiums) of which MetLife was unaware; and (2) blaming Sharp for Rudzinski's failure to qualify for benefits. Neither of these accusations has any basis. MetLife knew of every litigation position Mandell Menkes asserted on MetLife's behalf. As Sharp is well aware (and as Mandell Menkes reminded it several times before Sharp filed its Cross-Claim), MetLife does not take the position (and has never taken the position) that *Sharp* had any obligation to pay Rudzinski's post-termination premiums or that Sharp was to blame for Rudzinski's failure to qualify for benefits. However, even if MetLife had taken such positions at Mandell Menkes' urging, which it did not, Sharp still would have absolutely no basis to seek the disqualification of Mandell Menkes. Taking a litigation position, even if it is perceived as aggressive, does not by itself create a conflict. Not only has MetLife approved the litigation strategy in this case, it has also vigorously supported Mandell Menkes in the face of Sharp's relentless, tangential attack on the firm.[1]

Finally, Sharp's disingenuous argument that the Local Rules somehow disqualify Mandell Menkes as a firm because one or more of its attorneys has knowledge of claims or

---

[1] MetLife has appeared through one of its in-house attorneys to reinforce its support for Mandell Menkes. Mr. Mandell's firm has faithfully represented MetLife for well more than a decade, and Mr. Mandell has earned MetLife's loyalty and gratitude through his twenty plus years of dedicated representation.

defenses, or may be called to testify by Sharp, is unsupported by the express language of the rules. Sharp's Motion to Disqualify is nothing more than a harassing, expensive ruse.

## RELEVANT FACTUAL BACKGROUND

### A. *MetLife Makes The "Premium Non-Payment Argument"*

On September 12, 2005, Rudzinski and MetLife mediated their dispute over disability benefits. Prior to the mediation, Rudzinski and MetLife exchanged confidential "privileged settlement" letters and submitted copies of those letters to this Court. In its settlement letter (Sharp's Mem., Ex. C), MetLife set forth several bases to support its defense of Rudzinski's claim. MetLife argued – in pertinent part – that Rudzinski failed to qualify for any extension of Plan benefits after Sharp terminated her employment because (1) MetLife did not receive premium payments for the post-termination "Elimination Period" (*i.e.*, the "Premium Non-Payment Argument"), and (2) even if MetLife had received such premiums, Rudzinski still would not be eligible for benefits because she was not disabled as defined by the Plan. MetLife based the Premium Non-Payment Argument on a reasonable interpretation of the Plan (MET 681, 4/9/07 Sullivan Dep. 153:23-154:7, attached as Ex. A) and hornbook insurance law. Although Sharp hypothesizes that Mandell Menkes "concocted" this defense without MetLife's knowledge and contrary to its interests, the truth is that MetLife approved the Premium Non-Payment Argument.

### B. *Rudzinski Adds Sharp As A Defendant*

After the mediation, Rudzinski's attorney advised MetLife's counsel that Rudzinski planned to add Sharp as a defendant, not as Sharp contends solely because of anything MetLife said at the mediation, but rather explaining by e-mail that:

> **The basis of our claim is contained within the claim file.**
> On July 24, 2002 [Rudzinski] advised Sharp in response to

3

> its notice that it was ceasing premium payments on the group long term disability that she wanted to maintain her LTD coverage. MET 1052. Sharp then advised her to apply for conversion in order to maintain her coverage. We contend that this course of events constituted a wrongful interference with the attainment of benefits.

(MET 1523-24, attached as Ex. B.) (emphasis added). Rudzinski filed her Amended Complaint on October 6, 2005, adding a claim against Sharp for interference with the attainment of Plan benefits.

### C. *Sharp Conjures Up The Unfounded "Finger-Pointing Claim"*

In May 2006, Sharp's attorneys from Epstein Becker & Green P.C. withdrew as counsel and attorneys from Fisher & Phillips LLP appeared for Sharp. In early June 2006, Sharp's new attorneys arranged for an introductory telephone conference with MetLife's attorneys to familiarize themselves with the case history. Shortly thereafter, in a letter dated June 9, 2006, to MetLife's counsel, Sharp began to twist the facts. (6/9/06 Annunziata Letter, attached as Ex. C). Sharp contended that MetLife had tried to blame Sharp during the mediation, specifically alleging that MetLife had argued that "Sharp was required to pay premiums . . . on behalf of [Rudzinski] after her termination" and failed to do so. (the "Finger-Pointing Claim") (*Id*.) By letter dated June 15, 2007, MetLife repeated its offer during the phone conference to work together to defeat Rudzinski's claims, and stated that "MetLife has never alleged that 'Plaintiff was not qualified under the Group Plan because Sharp had not paid premiums post plaintiff's termination.' With respect to payment of premiums, MetLife's position is, and always has been, that coverage and benefits under the Group Plan are contingent upon payment of premiums throughout the 180 day Elimination Period." (6/15/07 Harris Letter, Ex. D). This letter was one of many instances in which MetLife advised Sharp that its Finger-Pointing Claim was false, that the defendants were aligned and should cooperate in defending the lawsuit.

4

Despite MetLife's multiple affirmations that Sharp's Finger-Pointing Claim was completely baseless, Sharp filed the Cross-Claim. Paragraph 34 of the Cross Claim exemplifies the false predicates of Sharp's claim against MetLife:

> After the lawsuit was filed, MetLife advised Plaintiff that an *additional reason MetLife denied* Plaintiff's long term disability benefits claim was that Plaintiff did not qualify for benefits because *Sharp* discontinued payment of Plaintiff's long term disability insurance premiums following the termination of her employment ("MetLife statement"). MetLife's statement was based on a purported underlying *obligation of Sharp* to pay Plaintiff's long term disability insurance premiums following the termination of her employment.

(Cross Claim ¶ 34.) (emphasis added.) As set forth above and MetLife advised Sharp prior to filing the Cross-Claim, nothing in this paragraph is based on the facts.

## ARGUMENT

**I.    METLIFE CONSENTS TO MANDELL MENKES' REPRESENTATION**

Sharp has no business inserting itself into Mandell Menkes' and MetLife's attorney-client relationship. Even if a conflict existed, which MetLife vigorously denies, MetLife has discretion to waive that conflict by consenting to representation. In fact, MetLife has repeatedly and steadfastly supported Mandell Menkes' representation in this matter. Such support precludes disqualification. The relevant Local Rule specifically states that a lawyer shall not represent a client in a conflict of interest situation "unless the client consents after disclosure." N.D. Ill. LR 83.51.7 (b)(2). *See also Tizes v. Curico*, 94 C 7657, 1997 WL 116797, at *1 (N.D. Ill. March 12, 1997) (citing *Philips Medical Systems Int'l v. Bruetman*, 8 F.3d 600, 606 (7th Cir. 1993) (noting that "even where an actual conflict exists, the client may consent to representation by the attorney.") As this Court is well aware, MetLife's in-house counsel has repeatedly expressed

5

that MetLife not only consents to Mandell Menkes' representation, but also fully supports the firm's continued involvement. (5/8/07 Joint Statement, attached as Ex. E). MetLife's knowledge and support of its litigation position and its oft-stated support of Mandell Menkes preclude disqualification under the applicable local rule. *Tizes*, 1997 WL 116797, at *2 (disqualification denied where plaintiffs consented to representation after "full disclosure of any conceivable conflict").

### II. SHARP LACKS STANDING TO MOVE TO DISQUALIFY MANDELL MENKES

Sharp has not alleged (and cannot allege) it suffered any injury from the alleged conflict. The lack of any injury personal to the moving party is fatal to its standing to bring a motion to disqualify counsel. *Schneider v. County of Will*, No. 04-2058, 2005 WL 272910, at *2 (7th Cir. Jan. 21, 2005) (holding that parties not harmed in any way do not have standing to disqualify opposing counsel). In *Schneider*, the Seventh Circuit noted that moving to disqualify opposing counsel without alleging personal harm is a "rather strange procedure in that the moving party seeks not a definitive relief in connection with the action to which he is a party, but rather the collateral relief of depriving [an opposing party] of their counsel." *Id.*

Moreover, even if Sharp could allege some sort of personal harm, no evidence suggests that MetLife's attorney-client relationship adversely affects the fair and efficient administration of justice. "Except under special circumstances, a party may not seek disqualification of opposing counsel. . . . Absent evidence clearly calling into question the fair or efficient administration of justice, a party has no standing to seek disqualification of opposing counsel." *Tizes*, 1997 WL 116797, at *2 (citing *In re Sandahl,* 980 F.2d 1118, 1121 (7th Cir.1992)). Sharp's bald assertion that "the conflict is so patent as to 'call into question the fair administration of justice'" is insufficient to carry Sharp's heavy burden of showing that it has

6

standing to bring this motion. *Weeks v. Samsung Heavy Industries Co., Ltd.*, 909 F. Supp. 582, 583 (N.D. Ill. 1996) (holding that assertion in brief regarding conflict that was unsupported by evidence was insufficient to merit disqualification).

"The Seventh Circuit has stated repeatedly that disqualification of an attorney is a drastic measure which courts should hesitate to impose except when absolutely necessary [because it] . . . serves to destroy a relationship by depriving a party of representation of their own choosing." *Tizes*, 1997 WL 116797, at *2 (citing *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993)). The *Tizes* court emphasized that a party's challenge of opposing counsel's ability to represent his client "should be viewed with caution . . . for it can be misused as a technique for harassment." *Id*. The court held that "defendants' efforts to manufacture a conflict of interest range from highly speculative to utterly specious. Even if some kind of conflict did exist, it would have a negative effect on plaintiffs, not defendants." *Id*. The court therefore concluded, "Since defendants ha[d] not come even remotely close to showing that [plaintiff's counsel's] actions pose any kind of threat to the fair or efficient administration of justice, [defendants] ha[d] no standing to bring their motion to disqualify [plaintiff's counsel]." *Id.*

Similarly, Sharp lacks standing to bring the instant motion because it cannot come "even remotely close" to showing that Mandell Menkes' actions pose any threat to Sharp or the fair or efficient administration of justice.[2]

---

[2] Even if this Court were to determine that Sharp has standing to move to disqualify Mandell Menkes, Sharp waived its disqualification argument by waiting at least six months to file its motion. "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Weeks*, 909 F. Supp. at 584. Sharp claims to have known of "facts" supporting the alleged conflict no later than November 2006, when MetLife served its discovery responses. (Sharp's Mem. at 5.) However, Sharp waited to file its motion until May 2, 2007 – nearly six months after becoming aware of the "facts" underlying the motion. In the interim, MetLife has invested time and expense defending this case that will be wasted if Mandell Menkes is disqualified.

**III.  MANDELL MENKES HAS NO INTEREST IN THIS CASE OTHER THAN ITS PROFESSIONAL OBLIGATION TO METLIFE**

According to the Local Rules, a "lawyer shall not represent a client if the representation of that client may be materially limited … by the lawyer's *own interests*." N.D. Ill. L.R. 83.51.7(b) (emphasis added.) It is Sharp's burden to demonstrate that Mandell Menkes' representation of MetLife is "materially limited" by Mandell Menkes' "own interests." *See, e.g.*, *USA v. Ben Franklin Bank*, No. 99 C 6311, 2003 WL 21476020, at *4 (N.D. Ill. June 23, 2003) (Darrah, J.) (holding that plaintiff failed to carry burden to prove that either defendant's lawyer or his firm, which were alleged to have provided plaintiff legal advice relevant to the lawsuit, should be disqualified). Sharp has utterly failed to provide any such showing. Nor can it, because Mandell Menkes has no "interest" in this litigation aside from its professional obligation to its client, MetLife.

Sharp's motion is premised on an attack of the Premium Non-Payment Argument. But it is black-letter law that the payment of premiums is a precondition to insurance coverage. *Bergholm v. Peoria Life Ins. Co.,* 284 U.S. 489, 492 (1932) ("that the policy shall cease if the stipulated premium shall not be paid on or before the day fixed is of the very essence and substance of the contract, against which even a court of equity cannot grant relief") (citations omitted). MetLife stands behind the Premium Non-Payment Argument and has ratified it many times in this case. (*See, e.g.,* 6/15/06 Harris Letter, Ex. D; 5/8/07 Joint Statement, Ex. E.) Sharp seeks to mischaracterize the Premium Non-Payment Argument as an attack on *its* obligations, and to ascribe that attack to Mandell Menkes. Its persistent mischaracterization of MetLife's Premium Non-Payment Argument is not based on any evidence that MetLife or Mandell Menkes ever stated that Sharp was legally obligated to pay terminated employees' premium. Instead,

8

Sharp has chosen to believe Rudzinski's – and her attorney's -- misinterpretation of MetLife's position during a mediation that Sharp did not attend.[3] (Sharp's Mem. at 4.)

In addition, Sharp erroneously asserts in its motion that the Premium Non-Payment Argument was improper as a matter of law because MetLife never mentioned non-payment of premium in any of its denial letters to Rudzinzki. (Sharp's Mem. at 7.) In fact, there is no dispute that the non-payment of premiums was not included in the relevant denial letters. These letters are part of the administrative record produced to Sharp on March 17, 2006. Nevertheless, Sharp has taken the depositions of MetLife employees, who, as one might expect, testified at deposition that the non-payment of premium was not a basis for MetLife's denial. Sharp's persistent focus on the issue is misplaced, if not frivolous.

A defendant in a lawsuit seeking ERISA-regulated benefits from a claim fiduciary may raise a defense of the denial determination in litigation that was not raised in the denial letters. As the Seventh Circuit stated in *Urbania v. Central States, SE and SW Areas Pension Fund*, 421 F.3d 580, 586-7 (7th Cir. 2005), if it is clear from the information in the administrative record that a plan participant was on notice of a potential basis for denial, but the denial letters omitted reference to the basis, a court nevertheless should consider the omitted basis when evaluating the denial of benefits. Plaintiff's counsel apparently was aware of this because after the mediation he checked the administrative record and found the communications between Sharp and Rudzinski regarding Rudzinski's employment termination and the date premium payments would end along with her coverage. (MET 1523-24, Ex. B.) Plaintiff's counsel, finding the Premium Non-Payment Argument to be of some concern, thereafter moved to amend the Complaint. (Docket Entry 22.) Consequently, MetLife's assertion of the Premium Non-

---

[3] Plaintiff added Sharp as a defendant in this litigation on October 6, 2005, three weeks after the subject mediation concluded. (Docket Entry 25).

9

Payment Argument was (1) proper, and (2) indicates no conflict between MetLife and its counsel.

## IV. METLIFE'S PLEADINGS AND DISCOVERY RESPONSES SUPPORT THE PREMIUM NON-PAYMENT ARGUMENT

Sharp erroneously claims that MetLife's pleadings and discovery responses "establish an irreconcilable conflict" with Mandell Menkes. (Sharp's Mem. at 5.) In fact, Sharp cannot point to a single Mandell Menkes or MetLife statement supporting Sharp's manufactured conflict. MetLife's pleadings and discovery responses bolster the Premium Non-Payment Argument, and belie Sharp's conflict allegations.

### A. MetLife's Pleadings Support the Premium Non-Payment Argument and Provide no Support for Sharp's Misconstruction of this Defense.

MetLife filed its Answer to Rudzinski's Amended Complaint on October 31, 2005. A copy of MetLife's Answer to the Amended Complaint is attached hereto as Ex. F. Contrary to Sharp's unfounded Finger-Pointing Claim, MetLife never asserted in its Answer to Rudzinski's Amended Complaint that "Sharp's non-payment of premiums contributed to Rudzinski's failure to qualify for benefits under the Plan." (Sharp's Mem. at 5.) Moreover, nowhere in its Answer or any of its pleadings does MetLife assert that Sharp had any obligation to pay post-termination premiums on behalf of Rudzinski. MetLife stated only that payment of premiums was necessary for Rudzinski to be eligible for long-term disability ("LTD") insurance coverage. This is the same argument MetLife asserted at mediation. Sharp cannot point to any MetLife pleading that supports its allegations of conflict.

### B. The Premium Non-Payment Argument Is Consistent With MetLife's Discovery Responses

Ironically, each of the discovery responses Sharp references demonstrates that the Premium Non-Payment Argument asserted at the mediation is entirely consistent with MetLife's

discovery responses throughout the case. The cited materials reveal absolutely nothing about the nature of the illusory "irreconcilable conflict."[4] (Sharp's Mem. at 6.)

For example, MetLife's discovery responses demonstrate that MetLife based the Premium Non-Payment Argument on, *inter alia,* its reasonable interpretation of the Plan:

- MetLife's interrogatory responses state that former Mandell Menkes attorney Michael Rakov[5] may be called to testify regarding the fact that the Premium Non-Payment Argument was "based on a good faith interpretation of the terms of the Plan." (Sharp's Mem. Ex. I, ¶ 6); and

- MetLife's 30(b)(6) witness testified that "the Plan language reasonably indicates that premiums are to be paid by someone, not necessarily Sharp, but by someone during the elimination period" (4/9/07 Sullivan 30(b)(6) Dep. 120:21-23, Ex. A.)

Moreover, Sharp even noticed the deposition of a "corporate representative" to testify to "the basis of" paragraphs 18, 19, and 25 of MetLife's Answer to the Amended Complaint. (Sharp's 30(b)(6) Deposition Notice ¶16, attached as Ex. H). MetLife objected to the deposition topic on the grounds that counsel's legal reasoning was privileged (1/4/07 Harris E-mail, Ex. I). This Court ordered MetLife to designate a corporate representative responsive to the topic, but specifically preserved MetLife's right to assert the work product doctrine and attorney-client privilege. MetLife's selection of current Mandell Menkes attorney Natalie Harris as its designee on the topic (which called for a legal interpretation of the Plan) in no way indicates any conflict with MetLife. In fact, Ms. Harris' testimony supports the Premium Non-Payment Argument,

---

[4] Sharp dedicates nearly a full page of the Memorandum to describing objections to Sharp's Rule 30(b)(6) deposition questions, but such objections were based on the fact that the questions fell outside the scope of the designated topics. (Sharp's Mem. at 7-8.) In fact, MetLife invited Sharp to advise it if it disagreed with any of MetLife's objections so that MetLife could file the appropriate protective order. (4/25/07 Letter, Ex. G.) Sharp never did.

[5] Mr. Rakov has not worked for Mandell Menkes or represented MetLife since October 2005. Accordingly, he will not be advocating for MetLife at trial or any other evidentiary matter in connection with this case. Furthermore, Sharp jumps to the faulty conclusion that all individuals MetLife disclosed in interrogatory responses as people with knowledge will necessarily be called to testify.

11

and lends no credence to Sharp's position. (*See, e.g.*, Harris Dep. 11:10-18, 19:14-20:4, attached to Sharp's Mem. as Ex. M.)

## IV. LOCAL RULE 83.53.7 DOES NOT PRECLUDE MANDELL MENKES FROM REPRESENTING METLIFE

Sharp attempts to manufacture a conflict under Local Rule 83.53.7 where none exists. Local Rule 83.53.7 deals with a lawyer's limitations to *participate at trial* where (1) the lawyer is called as a witness *on behalf of his client* or (2) the lawyer is called as a witness *other than on behalf of his client*. (N.D. Ill. LR 83.53.7(a) and (b).) First, MetLife has no intention of calling any Mandell Menkes attorney to testify on its behalf. Second, even if MetLife did call certain Mandell Menkes attorneys at trial, nothing would prevent those attorneys from participating in all other aspects of the litigation and other attorneys in the firm from participating at trial. Third, in the event *Sharp* intends to call a Mandell Menkes attorney to testify on *Sharp's behalf*, Sharp cannot preclude such attorney from participating at trial because it cannot show that the attorney's testimony would be prejudicial to MetLife. On the contrary, the available evidence confirms that any Mandell Menkes attorney's testimony would be favorable to MetLife's position in this case. Accordingly, Local Rule 83.53.7 does not preclude any Mandell Menkes attorney from representing MetLife in this litigation.[6]

### A. That Fact That Mandell Menkes Attorneys Have Knowledge Relevant to the Lawsuit Does Not Necessarily Mean Such Individuals Will be Called To Testify

Merely identifying individuals with relevant knowledge who could testify does not mean that a party intends to call such individuals to testify at trial. The only current or former Mandell

---

[6] Even if LR 83.53.7 otherwise precludes certain Mandell Menkes attorneys from participating at trial, LR 83.53.7(a)(4) permits such attorneys to participate at trial "if refusal to act as an advocate would work a substantial hardship on the client." MetLife's current counsel have advocated on MetLife's behalf in this complicated matter for more than two years. Disqualifying them at this late point in the litigation would prejudice MetLife by depriving it of the value of fees already paid, as well as Mandell Menkes' knowledge of the case.

12

Menkes attorney MetLife has indicated it may call to testify at trial is former Mandell Menkes attorney Michael Rakov. (Sharp's Mem., Ex. I ¶ 6.) Contrary to Sharp's contention, Ms. Harris' testimony is not required, because it would serve only to corroborate Mr. Rakov's testimony regarding the Premium Non-Payment Argument raised at the mediation. (Sharp's Mem. at 14.) *See Heim v. Signcraft Screenprint Inc.*, No. 01 C 50014, 2001 WL 1018228, at *2 (N.D. Ill. July 24, 2001) (disqualification improper where witnesses other than lawyer are available to supply same information).

Sharp hypothesizes that MetLife needs to call Mandell Menkes attorneys at trial because no MetLife claims personnel had knowledge of the Premium Non-Payment Argument. The Premium Non-Payment Argument is a legal argument based on the terms of the Plan. To the extent that any factual testimony is required to support the argument, MetLife has disclosed Laura Sullivan, a manager, as someone with knowledge of the Plan and the administrative record. (Sharp's Mem. at Ex. I ¶ 2). In fact, Ms. Sullivan has testified that the Premium Non-Payment Argument is a reasonable interpretation of the Plan and referenced evidence of premium non-payment within the administrative record. (4/9/07 Sullivan Dep. 120:21-23, 153:23-154:7, 156:10-12, 158:7-13).

  **B. Even If This Court Prohibits Certain Mandell Menkes Attorneys From Advocating At Trial, They May Continue Handling Other Phases Of This Litigation And Other Mandell Menkes Attorneys Can Try The Case**

Sharp grossly over-reaches in asserting that "the disqualification should extend not only to the Mandell attorneys directly involved in the MetLife representation, but also to the entire Mandell firm." (Sharp's Mem. at 15.) This extraordinary relief is contrary to the governing rule. That rule specifically states that:

> a lawyer may act as advocate in a trial or evidentiary proceeding in which another lawyer in the lawyer's firm

13

> may be called as a witness, and nothing in this rule shall be deemed to prohibit a lawyer barred from acting as advocate in trial or evidentiary proceedings from handling other phases of litigation.

LR 83.53.7(c). Therefore, even in the unlikely event that one or more current Mandell Menkes attorneys is disqualified from advocating on MetLife's behalf at trial, if there is one, other Mandell Menkes attorneys may try the case. Further, the disqualified attorneys may continue to handle all other aspects of the litigation until trial. *Id.*

### C. In Any Event, Mandell Menkes Attorneys' Testimony Would Only Be Favorable To MetLife

Sharp suggests that *Sharp* may call "one or more of the Mandell attorneys" to testify as an adverse witness. (Sharp's Mem. at 14.) Local Rule 83.53.7(b) clearly states, however, that when a lawyer is called as a witness "*other than on behalf of the client*, the lawyer *may* act as an advocate in a trial or evidentiary proceeding unless the lawyer knows or reasonably should know that the lawyer's testimony is or may be *prejudicial* to the client." LR 83.53.7(b) (emphasis added). Any testimony Sharp might elicit from Mandell Menkes attorneys would be favorable, not prejudicial, to MetLife. As set forth above, Ms. Harris' testimony was consistent with MetLife's position in the lawsuit. Sharp has not, and cannot, show that her testimony is in anyway "prejudicial to [her] client [MetLife]," as required by Local Rule 83.53.7(b).

Mandell Menkes has not advocated any positions in this case with which MetLife disagrees. In *Weeks*, 909 F. Supp. at 583, the court noted that under LR 83.53.7(b), counsel "would not be obligated to disqualify himself until he 'knows or reasonably should know' that his testimony would prejudice [his clients]." In denying plaintiff's motion to disqualify, the *Weeks* court concluded that "[plaintiff's] briefs and exhibits do not show that in the event

14

[defendants' counsel] testifies for [plaintiff], [defendants' counsel] would prejudice defendants."

*Id.* Likewise, Sharp cannot show that any Mandell Menkes attorney's testimony would be prejudicial to MetLife. Therefore, disqualification of any Mandell Menkes attorney is unwarranted.

## CONCLUSION

For the reasons stated herein, Metropolitan Life Insurance Co. requests that this Court deny Sharp Electronics Corp.'s Motion to Disqualify Mandell Menkes LLC and grant MetLife such further relief as this Court deems appropriate.

| | |
|---|---|
| Steven P. Mandell<br>Brendan J. Healey<br>Natalie A. Harris<br>**MANDELL MENKES LLC**<br>333 West Wacker Drive, Suite 300<br>Chicago, Illinois  60606<br>Telephone:  312-251-1000<br>Facsimile:  312-251-1010<br><br>Amy K. Posner[7]<br>MetLife Group, Inc.<br>One MetLife Plaza<br>Long Island City, New York 11101<br>Telephone:  212-578-8296<br>Facsimile:   212-251-1617<br>*Attorneys for Defendants* | Respectfully submitted,<br>METROPOLITAN LIFE INSURANCE COMPANY<br><br>By: __/s/ Steven P. Mandell_____<br>       One of  its Attorneys<br><br>By: _/s/ Amy K. Posner____ _____ __<br>       One of its Attorneys |

---

[7] Pursuant to LR 83.15, Amy K. Posner hereby designates the following local counsel for purposes of service: Steven P. Mandell, Mandell Menkes LLC, 333 W. Wacker Dr., Ste. 300, Chicago, IL 60606, Tel. (312) 251-1000.

## **CERTIFICATE OF SERVICE**

    The undersigned, an attorney, hereby certifies that I caused this ***METROPOLITAN LIFE INSURANCE COMPANY'S RESPONSE TO SHARP'S MOTION TO DISQUALIFY MANDELL MENKES LLC*** to be served on:

| | |
|---|---|
| Mark D. DeBofsky | Craig R. Annunziata |
| Daley, DeBofsky & Bryant | Brian K. LaFratta |
| 1 North LaSalle, Suite 3800 | Fisher & Phillips LLP |
| Chicago, IL 60602 | 1000 Marquette Building |
| | 140 S. Dearborn St. |
| | Chicago, IL 60603-5202 |

by ECF is indicated on this June 7, 2007.

                                                                                               /s/ Steven P. Mandell_____