

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SANDRA RUDZINSKI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> METROPOLITAN LIFE INSURANCE ) <br> COMPANY, ) <br> ) <br> Defendant. ) | Case No. 05 C 0474 <br><br> Magistrate Judge Arlander Keys |
| SHARP ELECTRONICS CORPORATION, ) <br> ) <br> Cross-Plaintiff ) <br> ) <br> v. ) <br> ) <br> METROPOLITAN LIFE INSURANCE ) <br> COMPANY, ) <br> ) <br> Cross-Defendant ) | Case No. 05 C 0474 <br><br> Magistrate Judge Arlander Keys |

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Cross-Plaintiff, Sharp Electronics Corporation's ("Sharp") Motion to Strike Cross-Defendant Metropolitan Life Insurance Company's ("MetLife") Additional Defenses and Portions of its Answer. For the reasons set forth below, Sharp's Motion is Granted in part, and Denied in part.

**I.  Motion to Strike MetLife's Affirmative Defenses**

Under Rule 12(f), a court may strike "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f); see also, *Home Depot U.S.A.,*

*Inc. v. UBM, Inc.*, 2007 WL 611279 (N.D.Ill. Feb.22, 2007). "A motion to strike serves the useful purpose [of] eliminating insufficient defenses and saving the time and expense that otherwise would be spent litigating issues that will not affect the outcome of the case." *U.S. v. Walerko Tool and Engineering Corp.*, 784 F.Supp. 1385, 1387-88 (N.D.Ind.1992).

Rule 12(f) motions to strike defenses, however, are not generally favored; they may be granted only if the defense is patently defective and could not succeed under any set of circumstances. *Home Depot*, 2007 WL 611279, at *1. An affirmative defense should not be stricken if it is sufficient as a matter of law or if it presents questions of law or fact. *Id.* Courts apply a three-part test in examining the sufficiency of affirmative defenses under Rule 12(f): (1) whether the matter is properly pled as an affirmative defense; (2) whether the affirmative defense complies with Federal Rules of Civil Procedure 8 and 9; and (3) whether the affirmative defense can withstand a Rule 12(b)(6) challenge. *Surface Shields, Inc. v. Poly-Tak Protection Systems, Inc.*, 213 F.R.D. 307, 308 (N.D.Ill.2003). An affirmative defense that fails to meet any of these standards must be stricken. *Id.*; *Rao v. Covansys Corp.*, 2007 WL 141892 at *2 (N.D. Ill. Jan 17, 2007).

With these standards in mind, the Court will address the challenged affirmative defenses. The Court agrees that MetLife's

2

Affirmative Defense No. 7, which alleges that Sharp lacks standing to bring an ERISA claim, must be stricken, because "lack of standing is not an affirmative defense." *Huthwaite, Inc. v. Randstad Gen. Partner, LLC.*, 2006 WL 3065470, at *8 (N.D. Ill. Oct. 24, 2006).

Sharp next challenges the allegations contained in Affirmative Defenses 10, 11, 12, 13, and 14 as "bare bones conclusory allegations" that must be stricken. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The Court agrees that MetLife's attempt to plead the defenses of unclean hands (No. 10); mootness and unripeness (No. 11); hearsay and privilege (No. 12); and breach of fiduciary duty (Nos. 13 and 14) falls short of Rule 8's requirements.

Affirmative defenses are pleadings subject to the same pleading requirements applicable to complaints, and must contain a short and plain statement upon which relief may be granted. *Id.* "Even under the liberal notice pleading standards of the Federal Rules, an affirmative defense must include either direct or inferential allegations as to all elements of the defense asserted." *Reis Robotics USA, Inc. v. Concept Industries, Inc.*, 462 F. Supp.2d 897, 904 (N.D. Ill. 2006); *Heller*, 883 F.2d at 1295 ("bare bones conclusory allegations" are not sufficient.) Equitable defenses, such as unclean hands, must plead the specific elements required to establish the defense. *State Farm*

*Mut. Auto Ins. Co. v. Riley*, 199 F.R.D. 276, 279 (N.D.Ill. 2001). In addition, "[m]erely stringing together a long list of legal defenses is insufficient to satisfy Rule 8(a). . . . It is unacceptable for a party's attorney simply to mouth [affirmative defenses] in formula-like fashion ('laches,' 'estoppel,' 'statute of limitations' or what have you), for that does not do the job of apprising opposing counsel and this Court of the predicate for the claimed defense-which after all is the goal of notice pleading." *Reis Robotics*, 462 F. Supp.2d at 907 (citations omitted).

In this case, MetLife's bare bones allegations do not satisfy even the liberal notice pleading standards under the Federal Rules. The allegations fail to put either Sharp or the Court on notice of the factual and legal elements that form the basis of the referenced defenses. MetLife's Affirmative Defenses 10, 11, 12, 13 and 14 are stricken, without prejudice to refiling.

Next, Sharp claims that Affirmative Defenses 4 and 8 are not affirmative defenses at all, but are merely denials of the allegations raised in its Cross-Claim. Specifically, Sharp argues that Affirmative Defense No.4 is merely a denial of the allegations in Cross-Claim ¶ 24, which alleges that "Plaintiff met the conditions to be considered for benefits under the conversion policy." Affirmative Defense No. 4, however, alleges

4

not only that Plaintiff failed to meet the conditions to be considered for benefits under the conversion policy, but also that "Sharp directed Plaintiff to apply for the conversion policy knowing that Plaintiff . . . believed she was disabled." MetLife's Affirmative Defense is more than a mere denial of Plaintiff's ability to satisfy the terms of the conversion policy, and affirmatively alleges knowing conduct on Sharp's part. The Court declines to strike Affirmative Defense No. 4 on this basis.

Similarly, Sharp argues that Affirmative Defense No. 8 is inconsistent with one of its "primary" (but not specifically referenced) allegations that MetLife caused Plaintiff to sue Sharp. Paragraphs 33-35 of the Cross-Claim do allege that MetLife's conduct caused Plaintiff to sue Sharp. MetLife's Affirmative Defense that it is ready, willing, and able to cooperate with Sharp to defeat Plaintiff's claims, however, is not necessarily inconsistent with these allegations. Sharp's allegations refer to only a subset of MetLife's overall conduct, whereas MetLife's Affirmative Defense is broader and refers to its position not only just prior to Plaintiff's decision to sue Sharp, but after as well. As this Court has previously explained, "[m]any courts in the Northern District of Illinois-cognizant of the liberal pleading rules and the disfavoring of motions to strike- have not stricken affirmative

5

defenses merely because they could be more properly classified as 'denials.'" *Venta (bvba) v. Top Disposal II, Inc.*, No. 00 C 3172, 2001 WL 111235, at *1 (N.D.Ill. Feb. 8, 2001). The Court declines to strike Affirmative Defense No. 8 on the basis that it merely denies allegations of the Cross-Claim.

Sharp also argues that MetLife's Affirmative Defenses 1, 2, 3, 4, 5, 6, and 8 must be stricken because they do not demonstrate an absence of liability. Under Rule 8(a), an affirmative defense must refer to the elements of the cited defense. *Renalds v. S.R.G. Rest Group*, 119 F. Supp.2d 800, 803-804 (N.D. Ill. 2000)(a defense must explain how the allegations serve to defeat the plaintiff's claim.) Under Rule 8(c), a responding party must admit a complaint's allegations, but then explain why, from a legal perspective, it is nonetheless excused from liability. *Reis Robotics*, 462 F. Supp.2d at 905-906.

After reviewing MetLife's Affirmative Defenses, the Court agrees that, Affirmative Defenses 2, 3, 5 and 8 fail to identify the elements of a recognized defense, and fail to explain why, even accepting Plaintiff's allegations as true, the defenses excuse MetLife from liability. The Court strikes these affirmative defenses, without prejudice to refiling.

Affirmative Defense No. 1, however, which alleges that ERISA preempts Sharp's state law claims, does not suffer from the same infirmities. This defense puts Sharp on notice of MetLife's

6

position. And the Court concludes that Affirmative Defenses 4 and 6 narrowly satisfy Rule 8's requirements. The allegations in these defenses support the theory that MetLife should be excused from liability, because: 1) Sharp had unclean hands, because Sharp directed Plaintiff to apply for the conversion policy despite its belief that Plaintiff was not disabled; and 2) Plaintiff was already aware that Sharp had discontinued paying Plaintiff's long-term disability insurance premiums when MetLife informed Plaintiff as much. The Court declines to strike Affirmative Defense 1, 4, and 6, but grants Sharp's Motion to Strike Affirmative Defense Nos. 2, 3, 5 and 8, without prejudice.

Although Sharp's initial motion argued that Affirmative Defenses 1, 7, and 11 were barred by the doctrine of the law of the case, it wisely abandoned that argument in its reply brief. *See Alston v. King* 157 F.3d 113, 116 (7th Cir. 1998).

Finally, Sharp claims that the allegations in Affirmative Defense No. 9 are patently false, untrue, and, ultimately, sanctionable. Affirmative Defense No. 9 provides as follows:

> Sharp failed and refused to mitigate its alleged damages. Specifically, among other things, **Sharp opposed Plaintiff's motion to voluntarily dismiss all claims of the Amended Complaint Directed to Sharp.** At no time has Sharp's exposure to damages in connection with this litigation exceeded the $149,000 value of Plaintiff's claim for long-term disability insurance benefits.

Sharp vehemently denies that it objected to the voluntary dismissal. Indeed, in its Response to Plaintiff's Motion to

7

Voluntarily Dismiss, Sharp expressly stated that it in no way opposed the dismissal with prejudice of Plaintiff's claims against Sharp. However, Sharp's Response to Plaintiff's Motion goes on to request that the Court grant the Motion "on the condition" that the Court make certain factual findings beneficial to Sharp. Sharp's Response to Pl's Mot. To Vol. Dismiss at pp. 1-2. Judge Darrah noted that Sharp had in fact *objected* to Plaintiff's Motion, but only on the basis that certain language and findings should be included. The Court then granted Plaintiff's Motion without making the factual findings requested by Sharp.

Under these circumstances, the Court cannot label as sanctionable MetLife's decision to call Sharp's request for additional language an objection. Nevertheless, the Court will strike the second sentence of MetLife's Ninth Affirmative Defense, stating that Sharp failed to mitigate its damages by, specifically, opposing Plaintiff's Motion to Voluntarily Dismiss the claims directed at Sharp.

## II. Motion to Strike MetLife's Answers

Sharp also argues that MetLife's Answers to Sharp's Cross-Claim violate Rule 8(b) of the Federal Rules of Civil Procedure. Rule 8(b) directs defendants to answer the allegations of a complaint in one of only three ways: an admission, a denial, or a detailed statement explaining that the party is without knowledge

8

or information. Fed. R. Civ. P. 8(b); *King Vision Pay Per View, Ltd. v. J.C. Dimitri's Restaurant, Inc.*, 180 F.R.D. 332, 333 (N.D. Ill. 1998). Answers that fail to comply with Rule 8© should be stricken and deemed admitted. *Id.* at 334; *State Farm Mut. Auto. Ins. Co. v. Riley*, 199 F.R.D. 276, 277 (N.D. Ill. 2001).

Sharp's Cross-Claim sets forth a number of allegations regarding the contents of various letters and other documents; these allegations can be found in ¶¶s 18, 21, 26, 29, 30, 32, 53, and 55 of the Cross-Claim. Instead of admitting or denying these allegations, MetLife denies Sharp's "summarizing language," and then goes on to state, essentially[1], that the terms of the referenced documents speak for themselves. As Judge Shadur explained in *State Farm Mutual Automobile Insurance Co. v. Riley*,

---

[1] For example, MetLife answered Paragraph 18 of the Cross-Claim by stating that "MetLife denies the summarizing language contained in paragraph 18 . . . and states that the terms of the Plan govern eligibility for long-term disability"; similarly, in response to Paragraph 21, MetLife denied 'the summarizing language contained in paragraph 21 . . .and states that the bases for MetLife's denial of Plaintiff's claim under the conversion policy are set forth exclusively in its May 29, 2003 letter." The other challenged responses, found in response to paragraphs 26, 29, 30, 32, 53, and 55 of the Cross-Claim, are equally offensive. *Indiana Regional Council of Carpenters Pension Trust Fund v. Fidelity Deposit Co. of Md.*, 2006 WL 3302642, at *2 (N.D. Ind. Nov. 9, 2006) ("Courts have expressly held that a response indicating that a document 'speaks for itself' is insufficient under the Federal Rules.") MetLife's attempt to salvage its responses by noting that it did not use the exact phrase "the document speaks for itself" is unpersuasive in this case.

9

199 F.R.D. 276 (N.D. Ill. 2001), this device is frequently, and improperly, employed by lawyers who would prefer not to admit something that is alleged about a document in a complaint. Despite lawyers' persistence in relying upon the "speaks for itself" response, "this Court has been attempting to listen to such written materials for years (in the forlorn hope that one will indeed give voice)-but until some such writing does break its silence, this Court will continue to require pleaders to employ one of the three alternatives that are permitted by Rule 8(b)." *Id.* at 279. Because MetLife has failed to properly deny the allegations in Paragraphs 18, 21, 26, 29, 30, 32, 53, and 55 of the Cross-Claim, these Responses are stricken and the referenced allegations are deemed admitted[2].

### III. An Attorneys' Fee Award Is Not Warranted

Sharp argues that an award of attorneys' fees is warranted, because MetLife's answers and affirmative defenses were frivolous, inappropriate, and sanctionable, pursuant to 28 U.S.C. § 1927. Section 1927 permits courts to impose sanctions in the form of excessive costs, expenses and attorneys' fees

---

[2] MetLife properly cites to cases in which the offending party was permitted the opportunity to amend its answer, *see, e.g., Indiana Regional Council of Carpenters Pension Trust Fund v. Fidelity Deposit Co. of Md.*, 2006 WL 3302642, at *2 (N.D. Ind. Nov. 9, 2006). However, in *Indiana Regional*, the plaintiff specifically requested that the defendant be ordered to amend its offensive response. MetLife's attempt to discredit Sharp's "summaries" further convince the Court that the proper course is to deem these allegations admitted.

10

against attorneys who "unreasonably and vexatiously" "multiplies the proceedings in any case." *Id.* However, despite the Court's conclusion that many of MetLife's answers and Affirmative Defenses were improper, the Court disagrees that they warrant sanctions. "The court does not detect even a hint of vexatious intent behind" MetLife's filings. *Buchel-Regsegger v. Buchel*, 2007 WL 2570433, at*3 (E.D. Wis. 2007). Absent evidence that MetLife acted vexatiously, the Court is unwilling to impose sanctions under § 1927.

## CONCLUSION

For the reasons set forth above, the Court grants Sharp's Motion [166] to Strike Affirmative Defenses 2, 3, 5, 7, 8, 10, 11, 12, 13, and 14, but denies Sharp's Motion to Strike Affirmative Defenses 1, 4, and 6. The Court strikes that portion of Affirmative Defense No. 9 described above. The Court also Grants Sharp's Motion to Strike ¶¶ 18, 21, 26, 29, 30, 32, 53, and 55 of MetLife's Answers to the Cross-Claim. Finally, the Court denies Sharp's request for sanctions under 28 U.S.C. § 1927.

Dated: October 4, 2007            ENTER:

*[signature: Arlander Keys]*
ARLANDER KEYS
United States Magistrate Judge